**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KRISTEN MCDONALD,**

      **Plaintiff,**                             **Case No. 2:13-cv-503**
                                                **JUDGE GREGORY L. FROST**
**v.**                                           **Magistrate Judge Mark R. Abel**

**FRANKLIN COUNTY, OHIO.**

      **Defendant.**

**OPINION AND ORDER**

This matter is before the Court for consideration of the following filings: Plaintiff's

motion to certify class (ECF No. 77), Defendant Franklin County's (the "County") response in

opposition (ECF No. 79), and Plaintiff's reply memorandum (ECF No. 88). For the reasons that

follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

**I.**       **BACKGROUND**

On June 29, 2012, Plaintiff Kristen McDonald was arrested for disorderly conduct (a

fourth-degree misdemeanor). Plaintiff was transported to one of the County's two local

correctional facilities, Corrections Center Two, which the parties refer to as "Jackson Pike." The

Jackson Pike facility typically houses female detainees, while the second facility (Corrections

Center One) typically houses male detainees. Both facilities receive individuals charged with all

types of violations, from serious felony offenses to minor misdemeanors and city code

violations.

Upon admittance to Jackson Pike, Plaintiff was subject to the institution's "change-out"

procedure, which required Plaintiff to strip to her underwear in front of a Franklin County

Corrections Deputy. The Deputy visually inspected Plaintiff to determine if she had contraband

on her person.  Plaintiff also was required to remove her underwire brassiere and piercings from her breasts, at which point Plaintiff received a Jackson Pike uniform.  Plaintiff does not allege or assert that the Deputy or other County personnel touched her at any point.  Plaintiff does, however, allege that the visual inspection took place in front of other detainees who were waiting in line behind her.

After the "change-out" procedure, Plaintiff was directed to the identification room by a County Identification Technician ("ID Tech").  Plaintiff provided her fingerprints to the ID Tech.  At that point, the ID Tech (who was female), asked Plaintiff whether she had any tattoos.  Plaintiff responded that she had several tattoos and that some were located on her genitals.

A different ID Tech (who was male) informed Plaintiff that her tattoos would be photographed.  Plaintiff objected to the procedure but was informed that it was routine.  The male ID Tech then photographed Plaintiff's tattoos, which were located on her foot, upper back, and genitals.  The tattoo on Plaintiff's genitals is "elaborate" and includes the terms "Lesbian Liberta" and "Mary Jane," as well as a heart and tribal symbol.  (ECF No. 77-27.)  Plaintiff was required to lower her pants and underwear for the photograph, which depicts Plaintiff's clitoral hood.  The photographs of Plaintiff's tattoos were saved to the County's electronic database along with Plaintiff's identifying information.  Plaintiff notes that the photographs are capable of being sent through electronic mail; however, she has no evidence that such conduct occurred in this case.

After having her tattoos photographed, Plaintiff was transferred to a housing unit in the general population of the Jackson Pike facility.  She was released on bail the next day.  Two days later, Plaintiff was arraigned in the County Municipal Court, the charges against her were dismissed, and her record was sealed.

In her Amended Complaint, Plaintiff asserts that the change-out procedure amounts to a strip search, and that the County violated her Fourth Amendment rights under the United States Constitution by strip searching her before her arraignment and before she had the opportunity to post bail. Plaintiff also asserts that the County violated her Fourth Amendment rights by photographing her tattoos and retaining them after the charges against her were dismissed. Finally, Plaintiff seeks a declaratory judgment that the County's policies with respect to the change-out procedure and the photographs are unconstitutional, an injunction ordering the County to delete the photographs of her tattoos, and an injunction preventing the County from strip searching and photographing female detainees charged with minor crimes in the future.

Plaintiff seeks to represent a class of individuals similarly aggrieved by the County's policies. Pursuant to those policies, all detainees must go through the "change-out" procedure in order to be "slated" into the facility. Female detainees must disrobe to their underclothes, remove their brassiere if it contains an underwire, and remove their piercings while being observed by a female corrections deputy. The detainees then receive a corrections uniform.[1]

According to one County deponent, "[e]verybody who comes through the door is changed out into the jail uniform." (ECF No. 42, at 42–43.) In other words, the process applies regardless of whether the detainee would be able to make bail immediately upon entrance to the correctional facility.

Pursuant to County policy, the detainees are then sent to an identification room in the booking area with an ID Tech. The identification room is monitored by a video camera that is connected to the facility's control center. In the identification room, the ID Tech photographs

[1]The County argues that the change-out procedure is not a strip search; however, it does not advance this argument in opposing Plaintiff's motion to certify. Instead, the County argues that the change-out procedure is constitutional under Supreme Court precedent such that the Court should not certify the proposed classes even if the charge-out procedure was a strip search. For ease of reference, the Court will refer to the change-out procedure as a strip search in this Opinion and Order without opining on the merits of the County's argument.

the detainee's face, takes her fingerprints, and collects other vital information, all of which is stored in the County's electronic database.

The County's policy requires the ID Tech to ask the detainee whether she has any tattoos. If the detainee answers affirmatively, the ID Tech photographs the detainees' tattoos. The photographs are stored in the County's electronic database (known as "Identiview"). The purpose of the policy, according to one the County deponent, is to assist law enforcement in future investigations (for example, when a victim can identify the perpetrator only by his or her tattoos). The County asserts that it has a written policy prohibiting male ID Techs from photographing a female detainee's tattoos located in private areas.

At the time the events alleged in this lawsuit took place, the County's policy was to photograph tattoos regardless of their location on the body. The County changed that policy in April of 2014. Now, the County's policy states: "The documentation and images of tattoos on the buttocks, genitals and female breasts areas are limited to felony arrests only." (ECF No. 77-10, at PAGEID # 2675.)

Under both the new and old policy, following the tattoo photographing process, most of the detainees are sent to a housing unit within the facility's general population. If the detainee is able to make bail, she must wait in the housing unit until her bail is processed. In some cases, if "it's not a busy situation," the County will keep the detainee in the booking area instead of in a general housing unit before she can be released. (ECF No. 42, at 57.) On busy days, however, all detainees go to the housing unit and are housed with the facility's general population before they can be processed out of the facility.

Plaintiff's Amended Complaint (the operative complaint is this litigation) provides notice that she seeks to represent a class of individuals aggrieved by the policies outlined above—i.e, a

class of detainees who were strip searched upon admittance to Jackson Pike, and a class of

detainees who had tattoos in private areas photographed.  Plaintiff's motion for class certification

seeks to add a third class of individuals whose tattoos were photographed by a member of the

opposite sex.

Specifically, Plaintiff seeks certification of the following class and subclasses:

Strip Search Class:

All female detainees who have been placed into the custody of the Franklin
County Correctional Center Two ("Jackson Pike"), after being charged with
misdemeanors, minor misdemeanors, violations of probation, traffic infractions,
civil commitments, city code violations or other minor crimes, including failure to
pay fines, and were strip searched upon their entry into the Jackson Pike facility
prior to being arraigned before a judicial officer, pursuant to the policy, custom
and practice of the County of Franklin. The class period commences on May 23,
2011, and extends to the date on which Franklin County is enjoined from, or
otherwise ceases, enforcing its policy, practice and custom of conducting blanket
strip searches on all detainees admitted to the Jackson Pike facility.

Specifically excluded from the class are the Defendant and any and all of its
respective affiliates, legal representatives, heirs, successors, employees or
assignees.

Photography Subclass:

All female detainees who have been placed into the custody of the Franklin
County Correctional Center Two ("Jackson Pike"), after being charged with
misdemeanors, minor misdemeanors, violations of probation, traffic infractions,
civil commitments, city code violations or other minor crimes, including failure to
pay fines, and had photographs taken of their breasts, hypogastric region, genitals,
and/or buttocks upon their entry into the Jackson Pike facility prior to being
arraigned before a judicial officer, pursuant to the policy, custom and practice of
the County of Franklin. Detainees who are members of the class had photographs
taken of their genitals, their hypogastric region, the lobes of their buttocks and/or
the lobes of their breasts at the Jackson Pike facility. The class period commences
on May 23, 2011, and extends until April 30, 2014.

Specifically excluded from the class are Defendant and any and all of its
respective affiliates, legal representatives, heirs, successors, employees or
assignees.

Cross-Gender Photography Subclass:

All members of the Photography Class who had photographs taken of their tattoos by a Franklin County Identification Technician of the opposite sex. Detainees who are members of the subclass are limited to individuals whose records in the Identiview system reflect that photographs of their tattoos were taken by an Identification Technician, designated the "operator" in the Identiview system, who was of the male gender. The subclass is also comprised of members of the photography class whose tattoos were photographed when only an Identification Technician of the male gender was working in their facility.

(ECF No. 77-27, at PAGEID # 2854–57.)[2]

Defendant opposes Plaintiff's request to certify each of the proposed classes. The Court will address the parties' arguments with respect to the proposed "Cross-Gender Photography Subclass" first.

## II. CROSS-GENDER PHOTOGRAPHY SUBCLASS

Plaintiff raises the issue of a "cross-gender photography" class for the first time in her motion for class certification. Although her Amended Complaint provides notice of three proposed classes she seeks to represent, it does not mention the proposed cross-gender subclass. Nowhere in the Amended Complaint, other than a brief reference to the fact that a man photographed her tattoos, does Plaintiff suggest that she seeks to represent a class of individuals who had their tattoos photographed by someone of the opposite sex.

Plaintiff asserts that, through discovery, she discovered that a male ID Tech may have photographed other female detainees' tattoos. She therefore sought to add a cross-gender photography subclass to the class definitions in her Amended Complaint. Because she delayed filing her motion to amend the Amended Complaint, however, the Magistrate Judge denied her request. (ECF No. 70.) Plaintiff did not seek reconsideration of the Magistrate Judge's order.

---

[2] Because subclasses are "each treated as a class" under Rule 23, the Court undertakes the same Rule 23 analysis with respect to each class and subclass. Fed. R. Civ. P. 23(c)(5).

As a result of the Magistrate Judge's order, the Amended Complaint is the operative complaint in this litigation. The Amended Complaint does not put Defendant on notice that Plaintiff seeks to represent a cross-gender photography class to challenge the County's policy or practice of allowing a male ID Tech to photograph female detainees. Plaintiff nevertheless attempted to certify that subclass in a motion for class certification filed on August 7, 2014. Because the motion sought to certify classes based on definitions included in the proposed Second Amended Complaint (which was never filed), and not the operative Amended Complaint, the Court denied the motion without prejudice and ordered Plaintiff "to file a new motion to certify class using the properly defined classes as set forth in the first amended complaint." (ECF No. 75, at 1.)

Plaintiff filed a new motion to certify but again included the proposed Cross-Gender Photography Subclass. Plaintiff justified this action by inserting a footnote in her second certification motion that states: "District Courts are permitted to limit or modify class definitions to provide the necessary precision . . . A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." (ECF No. 77-27, at PAGEID # 2853 n. 2 (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).)

The proposition of law Plaintiff cites does not modify the general pleading requirement that a complaint must provide fair notice of the plaintiff's claim and the grounds upon which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nothing in the operative complaint puts the County on notice that Plaintiff is challenging, on behalf of a class, the County's practice of allegedly permitting a male ID Tech to photograph the private tattoos of female detainees. Plaintiff necessarily recognized that fact

when she attempted to amend her complaint to add the Cross-Gender Photography Subclass. But that request was denied, and Plaintiff cannot circumvent that denial by introducing a new class of individuals in her motion to certify.

In her reply in support of her motion, Plaintiff argues that the proposed Cross-Gender Photography Subclass is "supported by the facts pled in Plaintiff's Amended Complaint, which clearly detail[s] the strip search and photography practices detailed in this motion." (ECF No. 88-3, at PAGEID # 2988.) But although the Amended Complaint mentions that Plaintiff was photographed by a male ID Tech, it does not "detail" Plaintiff's theory that Franklin County's policy or practice allowed a male ID Tech to photograph the tattoos of multiple female detainees. To the contrary, the Amended Complaint clearly defines three proposed classes without reference to a cross-gender class. *See* ECF No. 20 ¶ 7. The Amended Complaint similarly identifies the policies Plaintiff challenges without reference to a policy permitting cross-gender photography. *See id.* ¶¶ 24 & 25.

As a result, the new proposed Cross-Gender Class does not limit the class definition in the complaint—it adds a new theory of liability over and above the County's liability for the tattoo policy. The authority Plaintiff cites in support of her position, therefore, is inapposite.

For those reasons, the Court **DENIES** Plaintiff's motion to certify the Cross-Gender Photography Subclass.

### III.    RULE 23

The Court proceeds to consider Rule 23's requirements with respect to the remaining classes. Pursuant to Rule 23, a court may certify a class action only if it meets the requirements of Rule 23(a) and either Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3).

Rule 23(a) sets forth four prerequisites that every class action must meet:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition to meeting each of those four requirements, every class action must meet one of the following:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

Plaintiff bears the burden of proof on her motion for class certification. *Golden v. City of Columbus*, 404 F.3d 950, 965 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The United States Supreme Court summarized that burden as follows:

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a).

*Comcast v. Behrand*, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citations omitted).

As for the Court's responsibility under Rule 23, it is well established that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Id*. (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–52 (2011)). Oftentimes, that "rigorous analysis" requires the Court to "probe behind the pleadings before coming to rest on the certification question," which frequently will entail "overlap with the merits of the plaintiff's underlying claim." *Id*. "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. (internal quotations omitted).

The Supreme Court has cautioned, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1194–95 (2013) (citing *Wal-Mart Stores*, 131 S. Ct. at 2551). In other words, district courts may not "turn the class certification proceedings into a

dress rehearsal for the trial on the merits." *In re Whirlpool*, 722 F.3d at 851–52 (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)).

With those caveats in mind, the Court turns its attention to the proposed Photography Class.

### A. Photography Class

#### 1. Numerosity

To prove numerosity, Plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In Re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 n. 24 (6th Cir. 1976), *cert. denied,* 429 U.S. 870, 97 (1976)). Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc., v. EEOC,* 446 U.S. 318, 330 (1996). Although "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." *McGee v. East Ohio Gas Co.,* 200 F.R.D. 382, 389 (S.D. Ohio 2001) (quotation and citations omitted).

Plaintiff satisfies her burden in demonstrating numerosity in this case. Plaintiff asserts, and the County does not dispute, that the number of misdemeanant detainees admitted to Jackson Pike who had photographs taken of their breasts, hypogastric region, genitals, and/or buttocks before being arraigned is ascertainable by reviewing records in the Identiview system. Plaintiff asserts that her counsel reviewed the Identiview records produced by the County and determined that there are 971 members of the Photography Class. Plaintiff provides a sworn affidavit from her counsel to that effect. *See* ECF No. 77-1, at PAGEID # 2388–89. The Court finds this

evidence sufficient to satisfy Rule 23's numerosity requirement. *See, e.g., Taylor v. CSX Transp., Inc.,* 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding the numerosity requirement satisfied when the class definition encompassed forty individuals); *Kelly v. Montgomery Lynch & Assocs., Inc.,* No. 1:07-CV-919, 2007 WL 4562912, at *3 (N.D. Ohio Dec. 19, 2007) (finding fifty class members sufficient to satisfy the numerosity requirement).

### 2. *Commonality and Typicality (Rule 23(a)(2) and Rule 23(a)(3))*

To prove commonality, Plaintiff must prove that "the class members have suffered the same injury." *Wal-mart*, 131 S. Ct. at 2551 (citing *Falcon*, 457 U.S. at 157). The claims "must depend on a common contention . . . of such a nature that is capable of classwide resolution— which means that determination of its truth or its falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

To prove typicality, Plaintiff must prove that the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). This requirement insures that the class representative's interests are aligned with the interests of the class members so that, by pursuing his or her own interests, the class representative also advances the class members' interests. *Id.* A plaintiff's claim is typical of the class if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In Re Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3–4 (3d ed. 1992)); *see also Salvagne v. Fairfield Ford Inc.,* 254 F.R.D. 321, 328 (S.D. Ohio 2009) ("In instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical

of the absent members." (quoting *In Re Catfish Antitrust Litig.,* 826 F.Supp. 1019, 1035 (N.D.

Miss. 1993))).  The plaintiff's claims need not be factually identical to the class members' claims

in order to satisfy the typicality requirement.  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525

(6th Cir. 1976).

The concepts of commonality and typicality "tend to merge" in practice because they

both "serve as guideposts for determining whether under the particular circumstances

maintenance of a class action is economical and whether the named plaintiff's claim and the

class claims are so interrelated that the interests of the class members will be fairly and

adequately protected in their absence."  *Wal-Mart Stores*, 131 S.Ct. at 2551 n. 5 (quoting *Falcon*,

457 U.S. at 157–158, n. 13).  As such, the Court considers the commonality and typicality

requirements together.  *See In re Whirlpool*, 722 F.3d at 853.

Plaintiff argues that commonality is satisfied because the issues of law and fact in her

claim for relief are common to those of the proposed class members.  Specifically, Plaintiff

argues that both her claim and the class members' claims rise or fall on the issue of whether the

Fourth Amendment prohibits the County from photographing misdemeanants' tattoos in private

places.  Plaintiff provides evidence of the County's tattoo photograph policy, *see* ECF No. 77-11,

and asserts that both she and the proposed class members are challenging the County's policy

under the balancing test of *Bell v. Wolfish*, 44 U.S. 520 (1979) and *Turner v. Safley*, 482 U.S.

789 (1987).  Plaintiff concludes that both her claims and the proposed class members' claims

will be validated or invalidated in one stroke.

Regarding typicality, Plaintiff asserts that her claim is typical of the proposed class

members' claims because both Plaintiff and the proposed class members had tattoos on their

breasts, hypogastric region, genitals, and/or buttocks photographed pursuant to County policy.

Plaintiff attaches to her motion the County's photograph of her genitals.  (ECF No. 77-12, at PAGEID # 2780.)  Plaintiff asserts that the County's conduct pursuant to its tattoo policy caused both her and the proposed class members' injuries.

The Court agrees with Plaintiff that the Photography Class satisfies both commonality and typicality.  The County's sole argument to the contrary—that both Plaintiff's claim and the class members' claims are facially weak and should be dismissed—implicitly concedes that fact.  Indeed, the County asserts in its brief that the proposed class' claims are "both weak and typical."  (ECF No. 79, at PAGEID # 2933.)  The County's argument that the class' claims (including Plaintiff's) should be dismissed because the policy is constitutional is a merits argument that the Court is precluded from considering at the class certification stage.  *See, e.g., In re Whirlpool*, 722 F.3d at 851–52.  If the County seeks to dismiss the class' claims because the tattoo policy is constitutional, it is free to raise that argument in a dispositive motion.

### 3.  Adequacy of Representation

Courts analyzing Rule 23(a)(4)'s adequacy of representation requirement must consider two criteria: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[] will vigorously prosecute the interests of the class though qualified counsel."  *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).  The first criterion overlaps the typicality requirement.  *In re Am. Med. Sys.*, 75 F.3d at 1083; *see also In re Dry Max Pampers*, 724 F.3d 713, 721 (6th Cir. 2013) ("[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012))).   The second criterion "raises concerns about the competency of class counsel."  *Falcon*, 457 U.S. at 157 n. 13.  Because the final

judgment is binding on all class members, both criteria are essential to insure due process. *In re Am. Med. Sys.*, 75 F.3d at 1083.

Plaintiff asserts, and the Court agrees, that she is an adequate class representative. Because her claims are typical of the class members' claims, her interests are aligned with the class members' interests so as to satisfy the "linchpin" of the adequacy requirement. *In re Dry Max Pampers*, 724 F.3d at 721. Plaintiff is well educated and invested in the outcome of this litigation. *Cf. Bown v. Gen. Motors Corp.*, 542 F.Supp. 94, 100 (N.D. Ohio 1981) (finding the *Senter* criteria satisfied when, *inter alia*, the plaintiff was "an articulate man with a college education" who "was able to competently assist his counsel"). And the County does not refute Plaintiff's assertion that she is an adequate class representative. The Court finds these facts sufficient to satisfy the first prong of the *Senter* analysis.

Regarding the second half of the inquiry, the Court agrees with Plaintiff that, judging from their resumes, her attorneys are qualified and experienced. *See* ECF Nos. 77-18, 77-19, 77-20, and 77-21. Several incidents in this litigation, however, cause the Court to question whether Plaintiff's counsel can devote the resources to this case that it requires. Plaintiff's counsel has struggled throughout this litigation to meet deadlines, as evidenced by the three motions for extension of time to file Plaintiff's initial class certification motion, two motions for extension of time to file a reply in support of that motion, motion for extension of time to respond to Franklin County's summary judgment motion, two motions for extension of time to file a reply in support of Plaintiff's motion to compel, and two motions for extension of time to file a reply in support of Plaintiff's second motion for class certification. *See* ECF Nos. 31, 34, 36, 58, 61, 72, 80, 82, 84, 86. Plaintiff's counsel also failed to review this Court's Local Civil Rules, as evidenced by a motion for extension of time premised on incorrect deadlines. *See* ECF Nos. 82 & 83.

Moreover, Plaintiff failed to respond to the County's arguments in opposition to Plaintiff's request to file a Second Amended Complaint, which caused the Magistrate Judge to deny Plaintiff's request. *See* ECF No. 70.

Although these instances give the Court pause, ultimately, the Court finds the *Senter* factors satisfied in this case. The Court therefore concludes that Plaintiff satisfies her burden under Rule 23(a)(4).

Having found that Plaintiff satisfies each of the Rule 23(a) prerequisites, the Court proceeds to consider whether Plaintiff can satisfy at least one of the requirements of Rule 23(b). Plaintiff argues, and the County disputes, that the proposed Photography class satisfies both Rule 23(b)(2) and Rule 23(b)(3).

### 4. Rule 23(b)(2) and Rule 23(b)(3)

Rule 23(b)(2) permits a court to certify a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Class actions proceeding under this rule are "mandatory" class actions—i.e., "potential class members do not have an automatic right to notice or a right to opt out of the class." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006); Fed. R. Civ. P. 23(c)(2)(A). "These procedural protections are considered unnecessary for a Rule 23(b)(2) class because its requirements are designed to permit only those classes with homogenous interests." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

Rule 23(b)(3), on the other hand, is "designed to accommodate claims for money damages." *Reeb*, 435 F.3d at 645. Such actions "require[] notice to the class members, including the member's right to opt out of the class." *Id.* (citing Fed. R. Civ. 23(c)(2)(B)). "The

additional requirements of notice and the opportunity to opt out are necessary in Rule 23(b)(3) classes precisely because claims for money damages involve individual interests that are necessarily heterogeneous in nature." *Coleman*, 296 F.3d at 448 (citing Fed. R. Civ. P. 23(c)(2) advisory committee's note).

As these cases show, to determine whether certification is appropriate under Rule 23(b)(2) and/or Rule 23(b)(3), the Court must begin its analysis by identifying the types of damages at issue in this case. Plaintiff seeks the following categories of damages: (1) an injunction requiring the County to "immediately desist from . . . photographing female detainees charged with minor crimes," (ECF No. 20 ¶ 61); (2) "an injunction ordering the deletion of all photographs of tattoos taken from the bodies of female detainees at the Workhouse and the Correctional Center;" (*id*.) (3) "uniform damages for a loss of human dignity and/or presumed damages," (ECF No. 77-27, at PAGEID # 2888); and (4) compensatory, individualized money damages for harm the policy caused each class member (*see id*.).

Plaintiff can pursue at least the first two categories of damages in a Rule 23(b)(2) class action. *See* Rule 23(b)(2). The individualized money damages sought in the fourth category, however, are not recoverable in a Rule 23(b)(2) class action. *See Wal-Mart Stores*, 131 S. Ct. at 2559 (holding that individualized money damages are not recoverable by a Rule 23(b)(2) class); *Reeb*, 435 F.3d at 651 (same); *Coleman*, 296 F.3d at 448–49 (same).[3] That is so because individualized money damages undermine the homogeny inherent in a Rule 23(b)(2) class action. *See Reeb*, 435 F.3d at 651. Individualized money damages, therefore, are recoverable only in a Rule 23(b)(3) class action. *See id*.

---

[3] It is an open question whether plaintiffs can pursue incidental, uniform damages "that inure to the group benefit" under Rule 23(b)(2). *Reeb*, 435 F.3d at 645–51 (discussing *Allison v. Citgo Petroleum Corp*., 151 F.3d 402 (5th Cir. 1998)); *see also Wal-Mart Stores*, 131 S. Ct. at 2561 (leaving open the question of incidental damages discussed in *Allison*).

Removing individualized money damages from the equation, the Court finds that Rule 23(b)(2)'s requirements are satisfied in this case. It is undisputed that the County applied its tattoo policy in the same manner with respect to all manners of the proposed class. And the injunctive and declaratory relief sought—an order that the County end its photography policy and delete the photographs of the class members' private tattoos—would equally benefit the class as a whole.

The County's arguments against Rule 23(b)(2) certification are unpersuasive. The County argues that injunctive relief is unnecessary because it "ceased taking photos of tattoos in the breast, buttocks, and genital areas of misdemeanants in April of 2014" such that Plaintiff's request is moot. (ECF No. 79, at PAGEID # 2934.) But this argument does not address Plaintiff's request that the County delete the photographs of private tattoos in its electronic database. Moreover, because "a case becomes moot only when it becomes absolutely clear that the allegedly wrong behavior cannot be reasonably expected to recur," *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001), the County's voluntary cessation of the challenged practice "does not deprive the federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In other words, if the County's policy is found to violate the Fourth Amendment, then an injunction is necessary to prevent the County from "return[ing] to [its] old ways." *Id.* (quoting *United States v. W. T. Grant Co.,* 345 U.S. 629, 632 (1953)).

The County next argues that "Plaintiff failed to describe the equitable relief sought in sufficient detail to enable the court to craft an injunction compliant with Rules 23(b)(2) and 65(d)." (ECF No. 79, at PAGEID # 2934.) The Court disagrees. Plaintiff's Amended

Complaint adequacy explains the injunctive relief she seeks. The County does not provide any persuasive authority or argument to the contrary.

For its final argument against Rule 23(b)(2) certification, the County argues that Rule 23(b)(2) certification is "not incidental to the injunctive or declaratory relief." (ECF No. 79, at PAGEID # 2935 (quoting *Cowitt v. Citimortgage, Inc*., No. 1:12-cv-869, 2013 WL 940466, at *4 (S.D. Ohio Mar. 8, 2013)). This argument, to which Plaintiff does not respond, invokes the legal principle discussed above that Rule 23(b)(2) classes cannot recover individualized money damages. *See Wal-Mart Stores*, 131 S. Ct. at 2559; *Reeb*, 435 F.3d at 651; *Coleman*, 296 F.3d at 448–49. But the issue in those cases was whether the district court erred in certifying *only* a Rule 23(b)(2) class action in which the plaintiffs sought individualized money damages. *See Dukes v. Wal-Mart Stores*, 222 F.R.D. 137, 141 (N.D. Cal. June 21, 2004) (noting that the plaintiff sought certification under Rule 23(b)(2) with no mention of Rule 23(b)(3)); *Reeb*, 435 F.3d at 640 (noting that the district court granted certification under Rule 23(b)(2) only); *Coleman*, 296 F.3d at 444 (same); *see also Romberio v. Unumprovident Corp*., 385 F. App'x 423, 428; 442–43 (6th Cir. 2009) (applying *Reeb* in a case in which the district court certified a class under Rule 23(b)(2) only). Because a Rule 23(b)(2) class cannot recover individualized money damages, the courts in those cases found class certification improper.

Those cases do not stand for the proposition that a court must deny Rule 23(b)(2) certification any time a plaintiff seeks individualized money damages. In *Olden v. LaFarge Corp.,* for example, the Sixth Circuit affirmed a district court's grant of class certification under both Rules 23(b)(2) and 23(b)(3) when the plaintiff sought individualized damages. 383 F.3d 495, 511 (6th Cir. 2004)*; see also Kelly v. Montgomery Lynch & Assocs*., No. 1:07-CV-919, 2007 WL 4562913, at *6 (N.D. Ohio Dec. 19, 2007) (citing *Olden* and certifying a "hybrid

class" under Rules 23(b)(2) and 23(b)(3) over the defendant's argument that "class members may not seek both money damages and equitable relief"); *but see Cowitt v. Citimortgage, Inc.*, No. 1:12-cv-869, 2013 WL 940466, at *4 (S.D. Ohio Mar. 8, 2013) (holding, without addressing *Olden* or cases involving hybrid certification under Rule 23(b)(2) *and* Rule 23(b)(3), that Rule 23(b)(2) class certification is improper where a plaintiff seeks individualized damages).[4]  As such, the Court rejects the County's argument that Rule 23(b)(2) certification is improper simply because Plaintiff seeks individualized money damages.

The Court next examines Plaintiff's request to pursue, on behalf of a class, individualized money damages under Rule 23(b)(3).  Plaintiff argues that Rule 23(b)(3) certification is proper because common questions of law or fact predominate and because a class action is the superior method of adjudication.

The Court agrees.  Plaintiff provided evidence of the County's tattoo policy and photographs of class members' tattoos, both of which support her contention that common questions of law or fact predominate in this case.  Plaintiff also notes that this is a case in which class members are not likely to file individual actions, thereby making a class action the superior method of adjudication.  The County does not provide any persuasive argument to the contrary.

For those reasons, the Court **GRANTS** Plaintiff's motion to certify the Photography Class pursuant to Rule 23(b)(2) and Rule 23(b)(3).  The Court next turns its attention to the third and final proposed class, the Strip Search Class.

---

[4] The Court acknowledges that the Sixth Circuit's opinion in *Reeb* could be read to support the opposite conclusion.  *See Reeb*, 435 F.3d at 655 (Keith, J., dissenting) ("The majority adopts a standard wherein Title VII plaintiffs must seek exclusively injunctive or declaratory relief to be certified under Rule 23(b)(2).").  But *Reeb* neither overrules *Olden* nor addresses the availability of a hybrid class action under Rules 23(b)(2) and 23(b)(3). The case on which the County relies, *Cowitt v. Citimortgage, Inc.*, similarly fails to address *Olden* or the availability of hybrid class actions.  *See* 2013 WL 940466, at *4.  The Court therefore declines to follow the *Cowitt* court's reasoning on this issue.

### B. Strip Search Class

Before it can address the Rule 23(a) factors with respect to the proposed Strip Search Class, the Court must address the scope of Plaintiff's claim in light of recent Supreme Court precedent. *See, e.g., Reeb*, 435 F.3d at 644 ("[I]n order to find typicality and commonality, the precise nature of the various claims must be examined."). Although Plaintiff alleges that Franklin County violated the Fourth Amendment by strip searching pre-arraignment misdemeanants, the Supreme Court's opinion in *Florence v. Board of Chosen Freeholders of the County of Burlington*, 132 S Ct. 1510 (2012), substantially alters the scope of that claim. A detailed analysis of *Florence* is necessary to put the Court's Rule 23 analysis in context.

In *Florence*, the plaintiff was arrested for non-felony offense. *Id*. at 1514. The plaintiff was taken to two different correctional facilities, where he was required to remove his clothing while officers looked for contraband. *Id*. "This policy applied regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Id*. After each search, the plaintiff was admitted to the facility's general population. *See id*. The day after arriving at the second facility, the plaintiff was released and the charges against him were dismissed. *Id*.

The plaintiff sued on behalf of a class of individuals charged with nonindictable offenses who were directed to strip, prior to entering the facility's general population, without suspicion that they were concealing contraband. *Id*. at 1514–15.

The Supreme Court found the strip-search policy constitutional. After acknowledging that "[p]ersons arrested for minor offenses may be among the detainees processed at these facilities," the Court stated: "The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself. . . This puts the

entire facility, including detainees being held for a brief term for a minor offense, at risk." *Id.* at 1518–19. The Court went on to hold that strip searches of detainees arrested for minor offenses who—like Plaintiff in this case—were admitted into the facility's general population, even without reasonable suspicion that the individual being searched was carrying contraband, were constitutional as a matter of law. *Id.* at 1520–21.

*Florence* appears to dispose of Plaintiff's claim, but for one issue. The *Florence* Court left open, although it did not define, the possibility of a limited exception to its holding. In a concurring opinion, Justice Alito (whose vote was needed to achieve the 5–4 majority), stated:

> Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. In some cases, the charges are dropped. In others, arrestees are released either on their own recognizance or on minimal bail. For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible.

*Id.* at 1524 (Alito, J., concurring). Justice Kennedy's majority opinion acknowledged the potential exception:

> This case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees. . . . The circumstances before the Court . . . do not present the opportunity to consider a narrow exception of the sort Justice ALITO describes . . . which might restrict whether an arrestee whose detention has not yet been reviewed by a magistrate or other judicial officer, and who can be held in available facilities removed from the general population, may be subjected to the types of search at issue here.

*Id.* at 1522–23.

It is on this potential exception that Plaintiff's claim necessarily rests. Plaintiff argues that "[t]he status of detainees who have not seen a judge is still an open question under *Florence*," (ECF No. 88-3, at 3), but the "open question" after *Florence* is much narrower than

Plaintiff would like. Contrary to Plaintiff's position, the "open question" after *Florence* is limited to detainees who have not seen a judge *and* who can be housed outside the general population. *See id*. at 1522–24. If the detainees are admitted to the general population, then *Florence* renders a strip search prior to entering the general population constitutional.

*Florence*, therefore, substantially impacts the scope of Plaintiff's claim. The focus of Plaintiff's claim is not whether the County's policy of strip searching misdemeanants is constitutional; the focus is whether the County's policy of admitting misdemeanant detainees into the general jail population is constitutional. Relevant facts include the reasons the County admits misdemeanants into its general population, and whether "an alternative procedure is feasible." *Id*. at 1524 (Alito, J., concurring).

Viewed under this lens, Plaintiff's strip search claim can be summarized as follows: the County's policy of admitting pre-arraignment misdemeanants into Jackson Pike's general population (with the concomitant humiliation of a strip search) is unreasonable because an alternative procedure—holding such detainees in the facility's "booking area" until their arraignments—is feasible. *See* ECF No. 77-27, at PAGEID # 2879 ("Franklin County could easily segregate these pre-arraignment detainees from the general population of the Jackson Pike facility, as there is plenty of space in their booking areas to accommodate these individuals."). But a closer analysis of this claim shows that it does not align with Plaintiff's proposed Strip Search Class. Three reasons support that conclusion.

First, Plaintiff's claim relies on her argument that the County violated the Constitution by admitting her into the facility's general population rather than holding her in the booking area. The evidence reflects that, unlike Plaintiff, some of the proposed class members were held in the booking area until their arraignments. *See* ECF No. 42, at 57 (stating that some detainees are

held in the booking area prior to their release if "it's not a busy situation"). That distinction is significant. The latter class of detainees might argue that *Florence* does not apply because they were not admitted into the facility's general population; however, that argument is not available to class members like Plaintiff who were admitted into the general population.

Second, Plaintiff claims that she was harmed by the County's policy of refusing to hold pre-arraignment misdemeanants in the booking area because she was released immediately after her arraignment. In other words, if Plaintiff could have been held outside the general population until her arraignment, and if the County could only strip search detainees being admitted into the general population, she could have avoided a strip search. Justice Alito acknowledged this point in his concurrence when he stated: "[m]ost of those arrested for minor offenses are . . . are released from custody prior to or at the time of their initial appearance before a magistrate," in discussing why a policy admitting pre-arraignment misdemeanants into a facility's general population could be unreasonable. *Florence*, 132 S. Ct. at 1524.

The same is not true for all of the proposed class members. Plaintiff acknowledges that at least some misdemeanor detainees were unable to secure release before or immediately after their arraignments. *See* ECF No. 77-27, at PAGEID # 2879 ("The Plaintiff maintains that the proof in this action will show that the vast majority [but not all] of misdemeanor detainees admitted into Franklin County's custody are released before or immediately after their arraignment."). If those detainees were then admitted into the general population and strip searched anyway, the arguments regarding their injuries would be different than those of the detainees who secured immediate release.

Third, and relatedly, the County's defenses to each class member's claim will differ based on the activity in the booking area on the day she was admitted. The County defends its

policy by arguing that the booking area is needed for intake, housing mental health inmates, intoxicated inmates, and inmates awaiting transfer to another facility, among others. Plaintiff responds by pointing to the number of detainees admitted to the facility on the night she was arrested and arguing that the booking area could accommodate those detainees. *See* ECF No. 88-3, at PAGEID # 2977–78. In other words, she argues that the County's argument is weak as applied to the specific facts of her case. That argument does not apply to all members of the proposed class, such as class members who were arrested on days where a substantial number of detainees were admitted to the facility.

As these facts show, the proposed Strip Search Class encompasses members whose claims invoke different questions of law and fact, and different claims and defenses, from Plaintiff's claim. Plaintiff therefore fails to meet her burden in satisfying Rule 23(a)'s commonality and typicality requirements. Given that the proposed class includes members whose interests do not specifically align with hers, Plaintiff also fails to meet Rule 23(a)'s numerosity requirement. *Cf. Golden*, 404 F.3d at 966 (affirming the district court's denial of class certification when the plaintiff referred only to a "total number (absolute maximum)" of potential class members). The Court accordingly **DENIES** Plaintiff's motion for certification of the Strip Search Class. Only Plaintiff's individual strip-search claim remains pending in this action.

### IV.     MOTION TO COMPEL

As a final note, the Court addresses Plaintiff's motion to compel discovery pursuant to Rule 37. (ECF No. 76.) In this motion, Plaintiff requests that the Court order the County to produce the Identiview database, which (according to Plaintiff) will allow her to learn which ID Tech was on duty when certain private tattoos were photographed. Plaintiff asserts that this

information is relevant to the Cross-Gender Photography Subclass because it will allow her to identify those photographs of female detainees taken by a member of the opposite sex.

Rule 37 allows a court to compel discovery that is within the scope of Rule 26(b)(1), which permits the discovery of nonprivileged information that is relevant to any party's claims or defenses. Although relevance in this context is very broad, requests that are not reasonably calculated to lead to the discovery of admissible evidence are not within the scope of the Rule. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

Plaintiff's motion makes clear that the requested information from Identiview is sought in connection with the Cross-Gender Photography Subclass. But the Court denied certification of the Cross-Gender Photography Subclass, and Plaintiff does not argue that the requested information is relevant to the class or claims that remain in this litigation. Accordingly, the Court **DENIES** the motion to compel discovery. The Court declines to order the imposition of costs on either party.

## V.      CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for class certification. (ECF No. 77.) Specifically, the Court **GRANTS** Plaintiff's motion to certify the Photography Class pursuant to Rule 23(b)(2) and Rule 23(b)(3), and **DENIES** Plaintiff's motion to certify the Strip Search Class and Cross-Gender Photography Subclass. The Court also **DENIES** Plaintiff's motion to compel discovery. (ECF No. 76.)

**IT IS SO ORDERED**.

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**