## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

---

KRISTEN McDONALD, Individually and on
Behalf of a Certified Class of Other Similarly
Situated Plaintiffs,

No: 2:13-CV-0503

                Plaintiff,

      v.

FRANKLIN COUNTY, OHIO

                Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

The Plaintiff, Kristen McDonald ("Plaintiff"), on behalf of herself and all others similarly situated, through counsel of record ("Plaintiff's Class Counsel"), respectfully submits this Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement.

## I.      INTRODUCTION

This motion relates to a class action brought to redress the deprivation by Defendant Franklin County ("Defendant") of rights secured to the Plaintiff Kristen McDonald ("Plaintiff") and proposed Class by the United States Constitution and the laws of the United States of America. In the Complaint, (Dkt. No. 1), Plaintiff alleged that Defendant required all individuals placed into the custody of the Franklin County Corrections Center Two (the "Jackson Pike Facility") to be subjected to strip searches in groups upon admission, as well as having their tattoos photographed by Franklin County Identification Technicians. As explained more fully below, the

parties have negotiated a settlement agreement (the "Settlement") that will resolve the claims of Plaintiff and the members of the Certified Class. This highly beneficial Settlement represents the culmination of eight years of difficult litigation between the Parties. Class Counsel have reviewed thousands of documents and booking records, taken and defended numerous depositions, interviewed numerous fact witnesses including class members, filed extensive motions and briefs with the Court, appeared for hearings and attended two full-day mediation sessions with mediator Frank Ray. The resulting Settlement is fair, reasonable, adequate, and within the range for approval. Accordingly, preliminary approval of the Settlement and notice to class members is warranted at this time.

The parties respectfully move for an order: (1) preliminarily approving the settlement memorialized in the Settlement Agreement ("Settlement Agreement");[1] (2) maintaining class certification for settlement purposes; (3) approving the parties' proposed class member notices and methods in the Notice Plan;(4) enjoining settlement class members from prosecuting claims that are released pursuant to the Settlement Agreement; and (5) establishing a schedule for final approval and implementation of the settlement of this action, including a final fairness hearing.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff initiated this action on behalf of herself and on behalf of a proposed Class of thousands of other female detainees who were strip searched, and had photographs taken of their tattoos--all of which were in private areas--to vindicate the clear and unnecessary violation of their civil rights. Plaintiff was charged with a non-felony offense and was strip searched before she was

---

[1] *See* Settlement Agreement, attached hereto as Exhibit A.

arraigned and given an opportunity to post bail. Additionally, Plaintiff's tattoos, in compromising positions on her body, including on her mons pubis, were photographed by a Franklin County Identification Technician pursuant to a County policy. These actions were taken against the Plaintiff in violation of her rights under the Fourth Amendment of the United States Constitution, and the right to privacy protected by the Fourteenth Amendment. The manner in which these searches occurred, particularly in photographing female arrestee's tattoos on their breasts or private areas, is excessive and unnecessary for issues of jail security.

The Defendant denies the Plaintiff's allegations, however, and admits no liability in this settlement.

### A.    Procedural Background

Plaintiff filed her initial Complaint with this Court on May 23, 2013 as Jane Doe. (Dkt. No. 1). Plaintiff then filed her First Amended Complaint, revised to include her true identity, on September 30, 2013. (Dkt. No. 20). Defendant filed its Answer to Plaintiff's First Amended Complaint on October 17, 2013. (Dkt. No. 22). The matter was initially assigned to Magistrate Judge Mark Abel. The Parties then engaged in extensive discovery, including serving and responding to Interrogatories and document requests, reviewing thousands of pages of documents and interviewing fact witnesses. A jury trial was initially set for May 11, 2015, in front of United States District Court Judge Gregory L. Frost. (Dkt. No. 25). Plaintiff filed her first Motion for Class Certification on August 7, 2014 (Dkt. No. 45), which Defendant opposed (Dkt. No. 55). During the pendency of Plaintiff's Motion for Class Certification, Plaintiff filed a Motion for Leave to File Second Amended Complaint, to address facts established in discovery, modify the allegations of the complaint to address those facts, and modify the class definition accordingly.

3

(Dkt. No. 54). Defendant then moved for Summary Judgment on November 14, 2014, (Dkt. No. 69), incorporating many of the suggested amendments to Plaintiff's complaint in its motion.

This Court first denied Plaintiff's motion for leave on the grounds that the motion was untimely, and Plaintiff did not provide sufficient good cause for the Court to extend the previously imposed deadline to amend pleadings. (Dkt. No. 70). Subsequently, because both Plaintiff's motion for class certification and Defendant's motion for summary judgement targeted class definitions proposed in the second amended complaint, the Court accordingly denied those motions as well. (Dkt. No. 75).

Plaintiff then filed a second motion for class certification on January 16, 2015. (Dkt. No. 77). In her motion for class certification, Plaintiff sought certification of three subclasses; (1) a class of all female detainees who were strip searched (the "Strip Search class"), (2) a class of all female detainees who had photographs taken of their genitals, breasts, and/or buttocks (the "Photography class"), and (3) a class of all members of the Photography Class who had photographs taken of their tattoos by a Franklin County Identification Technician of the opposite sex (the "Cross-Gender Photography subclass"). *Id.* Defendant subsequently opposed Plaintiff's request to certify each of the proposed classes. (Dkt. No. 79). The Court partially granted the Plaintiff's Motion for Class Certification, and certified the class of all women charged with misdemeanors who had photographs taken of their private tattoos at the Jackson Pike Facility. (Dkt. No. 92). After the parties conferred, and the Court intervened, it was established that there are 682 members of the Certified Class.

On July 14, 2015, Plaintiff sought approval from the Court to disseminate notice. (Dkt. No. 105). Plaintiff's proposed notice plan consisted of sending a long form notice, and newspaper publication in the Columbus Dispatch of a short form notice, which this Court approved (Dkt. Nos.

4

105-106). Notice was successfully completed for the class, and no opt outs were received by class counsel.

The parties then filed cross motions for summary judgment on December 14, 2016. (Dkt. Nos. 162-163). In the Court's March 30, 2018 order, Plaintiff's motion for summary judgement, a declaratory judgment, and permanent injunction against Defendant were denied, and Defendant's motion for summary judgement as to Plaintiff's individual and class claims was denied in part. (Dkt. No. 187, at *27). This court found that there was a genuine issue of material fact as to whether Defendant's photographing of tattoos was an exaggerated response to the security risk posed by gang-affiliated inmates being housed together in the jail's general population. *Id.* at *23.

Based on the briefing submitted during the pendency of the parties' cross motions, the Court expressed concern that it had not been presented with all relevant facts, and thus held a status conference on April 26, 2018. There, the Court ordered supplemental discovery to address the utilization of the tattoo photographs and granted the parties opportunity to file renewed motions for summary judgment. (Dkt. No. 189). On August 30, 2018, Defendant filed its renewed motion for summary judgement, which included discussion and analysis of the supplemental discovery. (Dkt. No. 198). In its September 20, 2019, order, the Court again found, however, that the same genuine issues of material fact remained, and accordingly denied Defendant's motion. (Dkt. No. 213). Subsequently, on November 27, 2019, a jury trial was set for April 20, 2020. (Dkt. No. 214). This trial was adjourned because of the COVID-19 outbreak.

In March 2020, the parties filed cross-motions in limine regarding the limitation and exclusion of certain testimony. (Dkt. Nos. 215, 223). During the pendency of these motions, the parties revisited settlement negotiations and, on February 24, 2021, the matter was referred to Frank A. Ray, Esq. for a second mediation. (Dkt. No. 235). Settlement negotiations continued on

April 22, 2021, when the parties began their second full-day mediation session. After reaching a preliminary agreement to settle on April 22, 2021, the Parties spent several months memorializing the terms of the Settlement Agreement, prepared for the administration of the Settlement, and drafted the Class Notice that are attached to the Settlement Agreement. The Franklin County Board of Commissioners approved the Proposed Settlement Agreement on November 23, 2021..

Over the course of this litigation, numerous depositions were taken, including those of the Plaintiff, (Dkt. No. 38), deputy sheriffs assigned to the Franklin County facility during the relevant time period, (Dkt. Nos. 205, 206), and several other employees of the Jackson Pike Facility during the relevant time period (Dkt. Nos. 40, 43, 157, 158). Plaintiff also took the deposition of Captain Sean Stewart, a booking procedures expert from Pima County, Arizona. (Dkt. No. 195). Thousands of documents and photographs were exchanged between the parties during multiple rounds of discovery. These have been examined and analyzed by both parties and this Court. The instant Settlement Agreement therefore represents the culmination of enormous effort by the parties over nearly a decade of litigation.

## III.    THE PROPOSED SETTLEMENT

Plaintiff is pleased to present to the Court her Unopposed Motion for Preliminary Approval

of the Settlement of this Litigation. The parties have agreed to define the Settlement Class as:

> All female detainees who have been placed into the custody of the
> Franklin County Correctional Center Two ("Jackson Pike"), after
> being charged with misdemeanors, minor misdemeanors, violations
> of probation, traffic infractions, civil commitments, city code
> violations or other minor crimes, including failure to pay fines, and
> had photographs taken of their breasts, hypogastric region, genitals,
> and/or buttocks upon their entry into the Jackson Pike facility prior
> to being arraigned before a judicial officer, pursuant to the policy,
> custom and practice of the County of Franklin. Detainees who are
> members of the class had photographs taken of their genitals, their
> hypogastric region, the lobes of their buttocks and/or the lobes of
> their breasts at the Jackson Pike facility. The class period
> commences on May 23, 2011, and extends until April 30, 2014.
> (ECF No. 92).

As described below, the Settlement Agreement provides for the creation of a Settlement

Fund to compensate the Settlement Class for these alleged constitutional violations.


A.    **The Settlement Fund**

The Settlement Agreement, attached hereto as Exhibit A, defines the Settlement Class as

all female detainees who have been placed into the custody of the Jackson Pike Facility after being

charged with misdemeanors or other minor crimes, and had photographs taken of their breasts,

genital region, and/or buttocks upon their entry to Jackson Pike between May 23, 2011, and April

30, 2014 ("Class Members"). *See* Ex. A at p. 2.

The Settlement Agreement creates a Settlement Fund of $2,500,000.00. *Id.,* at pp. 3, 12-

13.   Class members will receive their *pro rata* share of the Settlement Fund after the payment of

attorneys' fees, expenses, service awards, and administrative and notice expenses. All payments

under this Settlement will be made within twenty-one (21) days of the Settlement Agreement's Effective Date. Each mailed check shall become void one-hundred eighty (180) days after issuance. Any funds from uncashed checks will be held by the Claims Administrator for an additional ninety (90) days during which time additional efforts will be made to reach any Class Members who have not cashed their checks. If any funds remain at the conclusion of this 90-day period, they will be redistributed via a supplemental pro rata payment to identified class members. No funds will revert to the Defendant. Any funds payable to deceased class members will be paid to their Estate or legal beneficiaries, pursuant to Ohio law.

The Common Fund will be administered by an independent and experienced third-party claims administrator, RG/2 Claims Administration LLC ("RG/2"). *Id.,* p. 8.

**B.      Injunctive Relief**

Upon the Effective Date, Franklin County will enact a policy forbidding photographing the tattoos of misdemeanor detainees as asserted in this lawsuit absent extraordinary circumstances and will train its employees about the new policy in due course.  Extraordinary circumstances include developments in the law with respect to misdemeanor detainees.  Upon the Effective Date, all photographs of the tattoos of class members will be sealed by an Order of the Court.  If necessary, and, upon notice to Plaintiff, Defendant shall petition the court for access to the photographs. Plaintiff will not unreasonably withhold consent to Defendant's request.  The County will destroy these photographs within five years after the date of the settlement agreement.

8

### C.  The Notice and Claims Process

Both the Class Notice and the Settlement Administrator provided for in the Settlement Agreement comport with the requirements of applicable law, Rule 23 of the Federal Rules of Civil Procedure and due process. First, all costs associated with publishing notice to the class members and the administration of the Settlement shall be deducted directly from the Settlement Fund before determining the distribution to the Settlement Class. Second, notice will be provided to the Class by direct mailing and emailing of the Class Notice to all individuals at their last known or readily ascertainable address (in English, with instruction that a copy in Spanish will be provided upon request). Additional notice will be provided to the Settlement Class by way of posting of the Class Notice in the Jackson Pike facility.

The Settlement Administrator shall also provide a copy of the Class Notice and Claim Form to anyone who requests notice through written communication to the Settlement Administrator, or through a toll-free telephone number to be established by the Settlement Administrator. The Settlement Administrator will also provide downloadable copies of notices, claim forms, court decisions and other information to Settlement Class members through a dedicated internet website, www.jacksonpikesettlement.com.

Defendants will cooperate in the Notice Program by providing Class Counsel and/or the Settlement Administrator with information necessary to effect notice to the Settlement Class, including providing to Class Counsel and/or the Settlement Administrator information sufficient to determine all last known addresses; and, if available, telephone numbers and email addresses; and Social Security numbers of all Class Members.

If, after the initial mailing, any Class Notices are returned as undeliverable, the Settlement Administrator will attempt to locate the relevant Settlement Class Members by way of a national

locator database or service and, if another address is found, re-mail the Notice to that new address. Class members will receive a check from the settlement fund for at least $2,000, to be paid by the Settlement Administrator after the settlement is funded.

Given the nature of this settlement, in that members of the class are receiving payments without any reversionary interest and without the need to file a claim form, class counsel will direct the settlement administrator to take significant additional steps to locate class members. Specifically, in addition to remailing notices, class counsel will direct the settlement administrator to utilize social media (Instagram, Facebook) to locate absent class members, as well as calling telephone numbers associated with a class member's booking records to attempt to reach class members by telephone. Class counsel will also direct the settlement administrator to utilize online locator services and a private investigator to locate absent class members. Class counsel is committed to locating all absent class members, and providing them with their settlement payment, over the next several months. According to the terms of the Settlement Agreement, if a class member cannot be located within 270 days of the issuance of initial checks here, those funds will revert to the members of the class who can be located via a supplemental distribution.

The Settlement Administrator and Class Counsel will provide affidavits to the Court, with a copy to Defendants' Counsel, attesting to the measures undertaken to provide Notice of the Settlement. The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by the Parties, which shall provide that the names, addresses and other information about specific Settlement Class Members and/or specific Settlement Class Members that is provided to it by Defendant, Class Counsel, or by individual Settlement Class Members, shall be treated as confidential and shall be used only by the Settlement Administrator as required by this Settlement Agreement.

10

The Settlement Administrator will employ an interpreter on a per diem basis to assist Settlement Class Members whose primary language is Spanish in filing claims under the Settlement.  The costs of this interpreter will be paid as an administrative cost.

The Proposed Long Form Notice, attached hereto as Exhibit B provide the definition of the class certified and the nature of the action—describing the claims at issue and indicating that the Defendant contests Plaintiff's claims.  They also set forth the material settlement terms, instructions on how to submit objections to the settlement, when and where to appear at the final approval hearing and how to opt out.  *Id.*  Finally, the notices advise the class of the binding effect that the class action may have on them.  *Id.*

After final Court approval of the Settlement Agreement and in accordance with its terms, RG/2 will ensure distribution of the settlement funds to the claimants by certified U.S. Mail. *Id.* These payments shall be made within 21 days of the Effective Date.  *Id.*  Any amount remaining in the Common Fund after deducting the amounts specified in the Agreement, including payments to Settlement Class members, attorney's fees, litigation costs, interest, penalties, any approved enhancement payment, taxes, and third-party administrator payments and costs, will be redistributed via a supplemental pro rata payment to identified class members. No funds will revert to the Defendant.  *Id.*

As set forth below, the parties submit that the Settlement Agreement satisfies all the criteria for preliminary settlement approval under federal and state law in that it falls well within the range of possible approval.  Accordingly, Plaintiff, with the consent of Defendant, requests that the Court grant the requested relief.

## IV. <u>LEGAL ARGUMENT</u>

**A.     Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable, and Adequate**

The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, *33-34 (E.D. Mich. Aug. 2, 2010) (noting that the Sixth Circuit favors the settlement of class action lawsuits); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. Nov. 1, 2006) (noting "the general federal policy favoring the settlement of class actions"). Under Rule 23(e) of the Federal Rules of Civil Procedure, a court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Whitlock v. FSL Mgmt., L.L.C.*, 843 F.3d 1084, 1093 (6th Cir. 2016).

Class actions and other complex matters are unique in that the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41 (4th ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and given the value of the individual claims, would be impracticable. The

Settlement, therefore, is the best vehicle for these employees to receive the reasonable, fair and adequate relief to which they allege they are entitled in a prompt and efficient manner. Thus, the settlement should be preliminarily approved.

### 1. The Standards and Procedures for Preliminary Approval

District courts in the Sixth Circuit balance the following factors to determine whether the proposed settlement is "fair, reasonable, and adequate":

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement.

*Bailey v. Verso Corp*., 337 F.R.D. 500, 505 (S.D. Ohio Feb. 22, 2021) (citing *Williams v. Vokovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *UAW*, 497 F.3d at 631.

The court need not make an affirmative determination of each factor but, rather, should grant preliminary approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls with the range of possible approval." *Bailey,* 337 F.R.D. at 505 (quoting *In re Telectronics Pacing Sys*., 137 F. Supp. 2d 985, 1015 (S.D. Ohio March 8, 2001)).

Consistent with Rule 23(e), district courts in the Sixth Circuit review class action settlement proposals using a three-step process: (1) preliminary settlement approval; (2) notice to the class of the proposed settlement; and (3) a fairness hearing after notice, "after which the Court must decide whether the proposed settlement is fair, adequate, and reasonable to the class as a whole, and consistent with the public interest." *In re Automotive Parts Antitrust*

*Litig.*, No. 12-md-02311, 2019 U.S. Dist. LEXIS 234448 (E.D. Mich. Dec. 29, 2019); *Gilbert v. Abercrombie & Fitch, Co.*, No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 103441, at *23 (S.D. Ohio Aug. 5, 2016). The preliminary approval of a proposed settlement is based on the Court's "familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Mayborg v. City of St. Bernard*, No. 1:04-CV-00249, 2007 U.S. Dist. LEXIS 77492, at *7 (S.D. Ohio Oct. 17, 2007).

### 2.     The Settlement is Fair, Reasonable and Adequate

The Court "enjoys wide discretion in assessing the weight and applicability of the aforementioned factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). In considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. Each factor that can be evaluated at this stage supports preliminary approval.

*First*, there was no fraud or collusion in reaching the settlement. Settlement negotiations were extensive, conducted fairly, and at arm's-length with the assistance of Frank Ray, an experienced mediator, and only occurred after the exchange and rigorous analysis of ample data. *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements); *Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ("[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). The Court wisely suggested that the parties use Frank Ray as a Mediator, and the settlement was reached with his guidance. Both parties'

14

counsel supports the Settlement as fair and reasonable, and all certify that it was reached at arm's-length.

*Second*, this dispute involves intricate issues of state and federal law that would take significant expense over a long period to resolve. Several complex, disputed issues would need to be addressed in this matter, likely on appeal, if the parties were to continue to litigate, including, but not limited to: the continued propriety of class certification; the validity of Plaintiff's claims; the validity of Defendant's affirmative defenses; and the proper measure of damages. The Plaintiff also bore the risk of not prevailing during the pending trial in this matter, or losing on appeal to the United States Court of Appeals for the Sixth Circuit.

*Third*, the parties have engaged in meaningful discovery. The parties have taken a total of 15 depositions and exchanged thousands of pages of written discovery so that Plaintiff could properly evaluate the value of her, and the Class's claims.

*Fourth*, Plaintiff and Defendant both faced significant risks on the merits and the potential class and collective scope of this matter. This is evident from the many complex issues the parties would need to address going forward, as set forth in evaluating factor two, *supra*.

*Fifth*, Plaintiff's counsel, who have resolved many civil rights cases on both a class-wide and individual basis, as well as many other class action cases, are convinced that this settlement is fair and reasonable both standing on its own and when viewed against similar civil rights settlements. *See*, Keach Declaration, Exhibit E. The actual, likely amount to be received by participating settlement class members is fair and reasonable. The Settlement is structured to provide relief to individual Class Members on a *pro rata* basis, akin to what they would receive in individual damages hearings, without the cost formalities and potential delays inherent in federal court proceedings. While recovery could be greater if Plaintiffs succeeded on all claims at trial and

15

survived an appeal, there is no guarantee of that. This valuation and allocation method is a reasonable and fair settlement for these claims and is particularly fair and reasonable given the inherent risks of continued litigation on the merits of plaintiffs' claims. The Plaintiff notes for the Court that the amount of the settlement was specifically recommended by the Mediator.

*Sixth*, it is not yet possible to evaluate the reaction of the Class since notice has not yet been disseminated, but Plaintiff anticipates a positive reaction given the substantial relief and the robust notice program.

*Seventh*, resolution of disputed claims in a complex putative class and collective action of this kind serves the public interest. The substantial judicial resources that would need to be used to resolve this dispute can now be redirected toward other public needs. Moreover, Plaintiff submits it is in the public interest that hundreds of individuals who were subjected to Defendant's policies and procedures are eligible for a meaningful monetary award and that the parties, including the Defendant Franklin County, will not face the risks and expense inherent in continued litigation. Additionally, Plaintiff submits it is in the public interest that Defendant cease its practice of photographing the tattoos of misdemeanor detainees as asserted in this lawsuit, and will train its employees about the new policy in due course.

The standards for preliminary approval of the Settlement Agreement are met in this case. Therefore, the Court should grant the present motion so that the Settlement Class can respond to the proposed Settlement Agreement, and the Court can evaluate its fairness at a final approval hearing.

16

**B.** **The Class Should Remain Certified for Settlement Purposes**

As detailed above, this Court has already granted class certification. (ECF No. 92). The Class should remain certified for settlement purposes for the same reasons the Court initially granted class certification.

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783-84 (3d Cir. 1995) (internal quotations omitted). "'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* at 784 (quoting *Deposit Guarantee Nat'l Bank v. Roper*, 455 U.S. 326, 339 (1980)). This Court previously granted Plaintiff's Motion for Class Certification. (Dkt. No. 92, at *20). Here, Plaintiff submits that the elements of Rule 23 are similarly met with respect to the proposed settlement, which, accordingly, warrants settlement class certification.

   **a.** The Elements of Rule 23(a) Continue to Be Satisfied for Settlement Purposes in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). Here, all four elements are satisfied for purposes of the class remaining certified.

### (i) The Class Continues to Satisfy the Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012). Importantly, "[t]he plaintiff is not required to establish that it is impossible to join all members of the proposed class, but simply that joinder would be difficult and inconvenient. *Id.* (internal quotations and citations omitted). Here, numerosity is satisfied because the Class in total includes 682 individuals. *See, e.g.*, *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 255 (S.D. Ohio 2017)) (generally accepted that class of 40 or more is sufficient to meet numerosity requirement).

### (ii) The Class Continues to Satisfy the Commonality Requirement

Commonality under Rule 23 "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart*, 288 F.R.D. at 183 (*quoting DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue

common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d at 1083 (internal quotations omitted). Here, the commonality requirement is satisfied because the central issue of law is whether the photographing of tattoos on the genitals, buttocks, and breasts of pre-arraignment detainees , is a violation of the Fourth Amendment.

### (iii) The Class Continues to Satisfy the Typicality Requirement

Under Rule 23(a)(3), "the claims ... of the representative parties [must] be typical of the claims ... of the class." *Swigart*, 288 F.R.D. at 185. Commonality and typicality "are separate and distinct requirements" but "tend to merge" and "are often discussed together." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). "A proposed class representative's claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory.'" *Id.* (quoting *Little Caesar Entpr., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997)).

The Sixth Circuit has described the typicality requirement in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Here, typicality exists because Defendant admits that it implemented a blanket policy regarding the photographing of detainee tattoos. (*See* Dkt. No. 187, at *24-26). As such, Plaintiff's claims are typical to the members of the Settlement Class because they involve claims that arise from the same course of conduct and are based on the same legal theories.

19

> **(iv)** **The Class Representative and Class Counsel Continue to be Adequate**

Rule 23(a)(4) requires that "'the representative parties will fairly and adequately protect the interests of the class.'" *Swigart*, 288 F.R.D. at 185. This results in a two-pronged inquiry: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 185-86 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). In other words, "Rule 23(a)(4) tests the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Id.* (quoting *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir.1977)).

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. As discussed in the Declarations of Class Counsel, and in the firm resumes provided by (attached respectively as Exhibits 2, 3 & 4 to the Keach Affirmation), Class Counsel is qualified, experienced, and generally able to conduct this litigation on behalf of the proposed class. Moreover, Plaintiff Kristen McDonald is an adequate class representative given her education, background, and demonstrated willingness to prosecute the litigation of this action. She does not have interests that are antagonistic to other Class Members.

> **b.** The Elements of Rule 23(b)(3) Continue to Be Satisfied for Settlement Purposes in the Present Case

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fairly and efficiently adjudicating the controversy."

20

Thus, Rule 23(b)(3) contains two inquiries: predominance and superiority. Plaintiff's claims in this matter satisfy both.

The predominance inquiry requires the Court to ask "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592, 619 (6th Cir. 2007). In this case, the proposed Class satisfies the Rule 23(b)(3) predominance requirement because the questions regarding the legality of Franklin County's policy is the central issue in this litigation, and these questions predominate over any individual issues. Other federal courts have found the predominance factor to be readily fulfilled in comparable civil rights class actions. *See, e.g., Swigart*, 288 F.R.D. at 177; *Lyons v. Citizens Fin. Group, Inc.*, NO. 11-11187-GAO, 2012 U.S. Dist. LEXIS 161205, at *9-10 (D. Mass. Nov. 9, 2012).

The superiority requirement of Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the dispute and lists four factors to consider: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). Each factor weighs in favor of continued certification for settlement.

First, there is no evidence that the putative class members have any interest in maintaining this litigation in separate actions. In fact, no other lawsuits have been filed to address Franklin

County's policy during the lengthy duration of this litigation.  Second, the benefits of concentrating the claims in this court through the class action mechanism are evident because Defendant consents to the Court's jurisdiction, and many of Defendant's witnesses are located in this district.   Finally, the manageability factor is automatically satisfied when a case remains certified for settlement purposes.  *See Amchem Prods*., 521 U.S. 591.

Based on the above, the proposed settlement class satisfies the requirements of Rule 23(a) and (b) and should remain certified for settlement purposes.

### 1.      Plaintiffs' Counsel Should Remain as Class Counsel

A court certifying a class generally must appoint class counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A).   This Court has already appointed Plaintiff's Counsel as Class Counsel and they should so remain. The Rule lists several factors for courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  *Id.*  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiff requests that the Law Offices of Elmer Robert Keach, III, PC, The Baker Law Group, Migliaccio & Rathod LLP, Robert Peirce & Associates, P.C. remain appointed as Class Counsel.  As already explained, these firms have diligently litigated this action and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-

party mediator. Moreover, as explained in the attached Declarations, and firm resumes, these firms have substantial credentials in class action litigation.

**C.      The Court Should Approve the Parties' Proposed Notices**

The content of the proposed Notices of Class Action Settlement fully complies with due process and Rule 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Notice proposed here satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).

The Short Form notice for publication is attached hereto as Exhibit C. The Long Form Notice for mailing is attached as Exhibit B.

23

**D.      The Court Should Schedule a Final Fairness Hearing**

The Court should schedule a Final Fairness Hearing to determine that class certification is proper and to approve the Settlement. *See* Manual for Complex Litigation, Third §30.44 (1995). The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the class certification and Settlement, including the fairness, adequacy and reasonableness of the Settlement. At that time, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h), as well as for the service award to the Representative Plaintiff. Accordingly, Plaintiff requests that the Court schedule the time, date, and place of the Final Approval Hearing.

V.      <u>**CONCLUSION**</u>

For all of the reasons stated above, Plaintiff respectfully requests that the Court enter the unopposed proposed Order granting preliminary approval, submitted herewith.

Dated: January 7, 2022                                    Respectfully Submitted By:

/s Elmer Robert Keach, III

Andrew Baker, Esquire                         Elmer Robert Keach, III, Esquire
THE BAKER LAW GROUP                  LAW OFFICES OF ELMER
50 W. Broad Street, Suite 1814                ROBERT KEACH, III, PC
Columbus, OH 43215                             One Pine West Plaza, Suite 109
Telephone: 614.228.1882                        Albany, NY 12205
Telecopier: 614.228.1862                        Telephone: 518.434.1718
andrew.baker@bakerlawgroup.net          Telecopier: 518.770.1558
                                                           bobkeach@keachlawfirm.com

Nicholas A. Migliaccio, Esquire
Jason S. Rathod, Esquire                         D. Aaron Rihn, Esquire
MIGLIACCIO & RATHOD LLP              Sara Watkins, Esquire
412 H St., NE, Suite 302                         ROBERT PEIRCE & ASSOCIATES, P.C.
Washington, DC 20002                           Gulf Tower, Suite 125

24

Telephone: 202.470.3520
Telecopier: 202.800.2730
nmigliaccio@classlawdc.com

707 Grant Street
Pittsburgh, PA 15219-1918
Tel: 412.281.7229
Fax: 412.281.4229
arihn@peircelaw.com