UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

KRISTEN McDONALD, Individually and on Behalf of a Certified Class of Other Similarly Situated Plaintiffs,

Plaintiff,

v.

FRANKLIN COUNTY, OHIO

Defendant.

No: 2:13-CV-0503

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Kristen McDonald ("Plaintiff"), on behalf of herself and all other members of the proposed Settlement Class respectfully submits this memorandum of law in support of her motion for final approval of the proposed Settlement of the above-captioned class action (the "Action"), and final certification of the Settlement Class.

### INTRODUCTION

In a Settlement Agreement executed on November 23, 2021, the parties reached a proposed Settlement that provides substantial benefits to female detainees who had photographs taken of their breasts, hypogastric region, genitals, and/or buttocks upon their entry into the Jackson Pike facility prior to being arraigned before a judicial officer. The Settlement, which was preliminarily approved by this Court on February 08, 2022, creates a Settlement Fund of $2,500,000.00 for the benefit of approximately 682 class members.

This Court previously issued preliminary approval of the Settlement, finding it "the result of good faith, arm's-length settlement negotiations between competent and experienced counsel for both Plaintiff and Defendant." (Dkt. No. 246). Plaintiff now moves this Honorable Court to grant final approval of the Settlement and maintain class certification.

This highly beneficial Settlement is the product of nearly nine years of difficult litigation between the Parties. Class Counsel have reviewed thousands of documents and booking records, taken and defended numerous depositions, interviewed numerous fact witnesses including class members, filed extensive motions and briefs with the Court, appeared for hearings and attended two full-day mediation sessions with mediator Frank Ray, Esq. Although these lengthy and complex negotiations have been difficult, the Parties' good-faith efforts to resolve this Litigation ultimately resulted in an arms-length Settlement representing a thoughtful compromise (which takes into consideration the Parties' respective concerns – a meaningful solution to the constitutional violations incurred by the members of the Class and to Franklin County's financial situation). The resulting Settlement is fair, reasonable, adequate, and within the range for approval.

After the Court granted preliminary approval, Notice was issued via RG/2 Claims Administration LLC, the Settlement Administrator selected by the parties. The Notice Program has been successful, and there have not been any opt-outs or objectors to date. Class Counsel will update the Court if any opt-outs or objections are received before the final fairness hearing to be held on May 12, 2022.

In short, Plaintiff respectfully submit that these facts demonstrate that the Court's preliminary determination that the Settlement should be approved was correct. Plaintiff now seeks final approval of the Settlement and final certification of the Settlement Class. Plaintiff submits that this settlement is an excellent result for the Class and satisfies all criteria for final approval

under Sixth Circuit law. Plaintiff therefore respectfully requests that the Court grant the instant motion.

## STATEMENT OF THE CASE

### I. PROCEDURAL HISTORY

Plaintiff filed her initial Complaint with this Court on May 23, 2013, as Jane Doe. (Dkt. No. 1). Plaintiff then filed her First Amended Complaint, revised to include her identity, on September 30, 2013. (Dkt. No. 20). Defendant filed its Answer to Plaintiff's First Amended Complaint on October 17, 2013. (Dkt. No. 22). The matter was initially assigned to Magistrate Judge Mark Abel. The Parties then engaged in extensive discovery, including serving and responding to Interrogatories and document requests, reviewing thousands of pages of documents and interviewing fact witnesses.

Plaintiff filed a motion for class certification on January 16, 2015. (Dkt. No. 77). In her motion for class certification, Plaintiff sought certification of three subclasses; (1) a class of all female detainees who were strip searched (the "Strip Search class"), (2) a class of all female detainees who had photographs taken of their genitals, breasts, and/or buttocks (the "Photography class"), and (3) a class of all members of the Photography Class who had photographs taken of their tattoos by a Franklin County Identification Technician of the opposite sex (the "Cross-Gender Photography subclass"). *Id.* Defendant subsequently opposed Plaintiff's request to certify each of the proposed classes. (Dkt. No. 79). The Court partially granted the Plaintiff's Motion for Class Certification and certified the class of all women charged with misdemeanors who had photographs taken of their private tattoos at the Jackson Pike Facility. (Dkt. No. 92). After the parties conferred, and the Court intervened, it was established that there are 682 members of the Certified Class. Notice was successfully completed for the class, and no opt outs were received by class counsel.

3

The parties then filed cross motions for summary judgment on December 14, 2016. (Dkt. Nos. 162-163). In the Court's March 30, 2018, order, Plaintiff's motion for summary judgement, a declaratory judgment, and permanent injunction against Defendant were denied, and Defendant's motion for summary judgement as to Plaintiff's individual and class claims was denied in part. (Dkt. No. 187, at *27). This Court found that there was a genuine issue of material fact as to whether Defendant's photographing of tattoos was an exaggerated response to the security risk posed by gang-affiliated inmates being housed together in the jail's general population. *Id.* at *23.

The Court expressed concern that it had not been presented with all relevant facts and thus held a status conference on April 26, 2018. There, the Court ordered supplemental discovery to address the utilization of the tattoo photographs and granted the parties opportunity to file renewed motions for summary judgment. (Dkt. No. 189). On August 30, 2018, Defendant filed its renewed motion for summary judgement, which included discussion and analysis of the supplemental discovery. (Dkt. No. 198). In its September 20, 2019, order, the Court again found, however, that the same genuine issues of material fact remained, and accordingly denied Defendant's motion. (Dkt. No. 213). Subsequently, on November 27, 2019, a jury trial was set for April 20, 2020. (Dkt. No. 214). This trial was adjourned because of the COVID-19 outbreak.

In March 2020, the parties filed cross-motions in limine regarding the limitation and exclusion of certain testimony. (Dkt. Nos. 215, 223). During the pendency of these motions, the parties revisited settlement negotiations and, on February 24, 2021, the matter was referred to Frank A. Ray, Esq. for a second mediation. (Dkt. No. 235). Settlement negotiations continued April 22, 2021, when the parties began their second full-day mediation session. After reaching a preliminary agreement to settle on April 22, 2021, the Parties spent several months memorializing the terms of the Settlement Agreement, prepared for the administration of the Settlement, and

drafted the Class Notice that are attached to the Settlement Agreement. The Parties executed the Settlement Agreement on November 23, 2021. The Franklin County Board of Supervisors approved the settlement that same day.

On January 7, 2022, Plaintiff filed an Unopposed Motion for Preliminary Approval, submitting the Stipulation and updated exhibits (Dkt. No. 245). The Court entered the Preliminary Approval Order on February 8, 2022 (Dkt. No. 246). The Court initially set a final fairness hearing for preliminary approval for May 9, 2022, but it was changed to May 12, 2022. Notice of the Settlement was sent to the 679 settlement class members by a qualified and competent claims administrator. In addition, the Notice was published on the internet at https://jacksonpikesettlement.com/index.html, a website created to provide Settlement Class members access to Settlement-related and relevant Court documents.

Presently, Class Counsel is unaware of any objections to any aspects of the Settlement nor any requests for exclusion from potential Settlement Class Members. There is no requirement to file a claim to receive settlement.

Over the course of this litigation, numerous depositions were taken, (Dkt. No. 38), (Dkt. Nos. 205, 206), (Dkt. Nos. 40, 43, 157, 158), and (Dkt. No. 195). Thousands of documents and photographs were exchanged between the parties during multiple rounds of discovery. These have been examined and analyzed by both parties and this Court. The instant Settlement Agreement therefore represents the culmination of enormous efforts by the parties over nearly a decade of litigation.

## II. TERMS OF THE SETTLEMENT

The Settlement Agreement's material terms are summarized below:

### a. The Settlement Class

The parties have agreed to define the Settlement Class as: "All female detainees who have been placed into the custody of the Franklin County Correctional Center Two ("Jackson Pike"), after being charged with misdemeanors, minor misdemeanors, violations of probation, traffic infractions, civil commitments, city code violations or other minor crimes, including failure to pay fines, and had photographs taken of their breasts, hypogastric region, genitals, and/or buttocks upon their entry into the Jackson Pike facility prior to being arraigned before a judicial officer, pursuant to the policy, custom and practice of the County of Franklin. Detainees who are members of the class had photographs taken of their genitals, their hypogastric region, the lobes of their buttocks and/or the lobes of their breasts at the Jackson Pike facility". The class period commences on May 23, 2011, and extends until April 30, 2014. (ECF No. 92).

### b. The Settlement Fund

The Settlement created a Settlement Fund of $2,500,000.00. Class members will receive their *pro rata* share of the Settlement Fund after the payment of attorneys' fees, expenses, service awards, and administrative and notice expenses. All payments under this Settlement will be made within twenty-one (21) days of the Settlement Agreement's Effective Date. Each mailed check shall become void one-hundred eighty (180) days after issuance. Any funds from uncashed checks will be held by the Claims Administrator for an additional ninety (90) days during which time additional efforts will be made to reach any Class Members who have not cashed their checks. If any funds remain at the conclusion of this 90-day period, they will be redistributed via a supplemental pro rata payment to identified class members. No funds will revert to the Defendant.

6

Any funds payable to deceased class members will be paid to their Estate or legal beneficiaries, pursuant to Ohio law.

### c. Injunctive Relief

Upon the Effective Date, Franklin County will enact a policy forbidding photographing the tattoos of misdemeanor detainees as asserted in this lawsuit absent extraordinary circumstances and will train its employees about the new policy in due course. Extraordinary circumstances include developments in the law with respect to misdemeanor detainees. Upon the Effective Date, all photographs of the tattoos of class members will be sealed by an Order of the Court. If necessary, and, upon notice to Plaintiff, Defendant shall petition the court for access to the photographs. Plaintiff will not unreasonably withhold consent to Defendant's request. The County will destroy these photographs within five years after the date of the settlement agreement.

### d. Class Notice and Settlement Administration

Notice was provided to the Class by direct mailing of the Class Notice to all individuals at their last known or readily ascertainable address (in English, with instruction that a copy in Spanish will be provided upon request). *See* Declaration of Jessie Montague and Exhibits thereto, collectively attached hereto as Exhibit 1.  The Settlement Administrator also provided a copy of the Class Notice and Claim Form to anyone who requested notice through written communication to the Settlement Administrator, or through a toll-free telephone number established by the Settlement Administrator. *Id.* Class Counsel also provided downloadable copies of notices, claim forms, court decisions and other information to the Settlement class through a dedicated website, www.jacksonpikesettlement.com. The Settlement Administrator also arranged for the Summary Notice to be published in the Columbus Dispatch on March 17, 2022. *Id.* Finally, the Settlement Administrator arranged for a digital banner advertisement campaign on the Columbus Dispatch

7

and Gannett Publishing digital network where Class Members could click on the advertisement and be linked to the settlement website. *Id.*

Given the nature of this settlement, in that members of the class are receiving payments without any reversionary interest and without the need to file a claim form, the settlement administrator has taken significant additional steps to locate class members. After the initial mailing, 112 Class Notices were returned as undeliverable. *Id.* The settlement administrator has remailed notices after locating the relevant Settlement Class Members by performing extensive skip-trace procedures and was able to locate updated addresses for 62 Class Members. *Id.* A total of 50 Notice Packets remains undeliverable by mail. *Id.* Accordingly, 92.7% of the Notice Packets were mailed without being returned as undeliverable. *Id.* For notices that continue to be undeliverable after address locator efforts are exhausted, Class Counsel and/or the Settlement Administrator will direct a private investigator to track down addresses for any such Class Members.

Each Class member will receive a check from the settlement fund in excess of $2,200, to be paid by the Settlement Administrator after the settlement is funded. If a class member cannot be located within 270 days of the issuance of initial checks here, those funds will revert to the members of the class who can be located via a supplemental distribution. Any amount remaining in the Common Fund after deducting the amounts specified in the Agreement, including payments to Settlement Class members, attorney's fees, litigation costs, interest, penalties, any approved enhancement payment, taxes, and third-party administrator payments and costs, will be redistributed via a supplemental pro rata payment to identified class members. No funds will revert to the Defendant.

# ARGUMENT

## I. LEGAL STANDARD FOR CLASS CERTIFICATION

A class action is an ideal vehicle for resolving those cases in which "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Glazer v. Whirlpool Corp.,* 722 F.3d 838, 835 (6th Cir. 2013) (quoting FED. R. CIV. P. 23(a)). The concepts of commonality, typicality, and adequacy "tend to merge in practice," such that they may be considered together. *Id.* at 853 (citing *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, n.5 (2011)).

"[T]he proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *Id.* (citing *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012)). In this instance, certification is appropriate for settlement purposes under Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members [and] the class action is superior to other available methods to adjudicate the controversy fairly and efficiently." *Id.* at 850-51.

## II. CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED.

On January 7, 2022, the Court granted Plaintiff's motion for preliminary approval of the Settlement and prior to that certified the Class, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. (Dkt. No. 246) (Dkt. No. 92). The Class continues to meet the requirements set forth by Fed. R. Civ. P. 23. Nothing has changed to alter the propriety of certification for settlement purposes and, for all the reasons stated in Plaintiff's preliminary

9

approval brief, incorporated herein by reference, Plaintiff requests that the Court grant final certification of the Class pursuant to Rules 23(a) and (b)(3).

### III. LEGAL STANDARD FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

"Before approval of a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW v. GMC,* 497 F.3d 615, 631 (6th Cir. 2007) (quoting FED. R. CIV. P. 23(e)(1)(A), (C)). The Sixth Circuit follows the general "federal policy favoring settlement of class actions." *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007); *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009) (showing a strong preference for settlements of class action lawsuits); *Vassalle v. Midland Funding, LLC*, No. 3:11-cv-00096, U.S. Dist. LEXIS 146543, at *16 (N.D. Ohio Oct. 14, 2014) ("It is axiomatic that the settlement of class-action litigation is favored."). To this end, Federal Rule of Civil Procedure 23(e) directs courts to a four-factor test for determining the reasonableness of a proposed class settlement.

In addition to the Rule 23 (e) factors, District courts in the Sixth Circuit balance the following factors to determine whether the proposed settlement is "fair, reasonable, and adequate": (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinion of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio Feb. 22, 2021) (citations omitted); *UAW*, 497 F.3d at 631; *see also Doe v. Ohio*, No. 2:91-cv-00464, 2020 U.S. Dist. LEXIS 24826 (S.D. Ohio Feb. 12, 2020) (granting final approval of a class action settlement a civil rights case on behalf of people with disabilities).

While these factors are helpful in guiding the analysis, the "fairness of each settlement turns in large part on the bona fides of the parties' legal dispute," that is, whether there are real

10

issues and risks in the case that would lead each party to opt toward settlement. *UAW v. GMC,* 497 F.3d 615, 631 (6th Cir. 2007).

### IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

The Court "enjoys wide discretion in assessing the weight and applicability of the aforementioned [UAW] factors". *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). To determine whether a settlement ought to be approved, district courts must consider whether the settlement arises from the parties seeking to avoid a legitimate legal or factual dispute. This does not mean that the court should "decide whether one side is right or even whether one side has the better of these arguments. . . . The question is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW,* 497 F.3d at 632.

Throughout this litigation, Defendant has vigorously denied and continues to deny liability. Material issues remain in dispute. Both sides recognize that the resolution of these disputed issues is uncertain and creates substantial risk, which was one of the many factors weighing in favor of a negotiated resolution. Here, all the *UAW* factors weigh in favor of final approval of the Settlement Agreement.

#### a) No Risk of Fraud or Collusion

There was no fraud or collusion in reaching the Settlement. Settlement negotiations were extensive, conducted fairly, and at arm's-length with the assistance of Frank Ray, Esq., an experienced and well-respected mediator, and only occurred after the exchange and rigorous analysis of ample data. See *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) ("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion."). *See also Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008). The

11

Court wisely suggested that the parties use Mr. Ray as a Mediator, and the settlement was reached with his guidance. Here, Plaintiff and the Class continued to be represented by experienced counsel. Both parties' counsel support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length.

### b) Complexity, Expense, and Likely Duration of Litigation

This dispute involves intricate issues of state and federal law that would take significant expense over a long period to resolve. If the Settlement Agreement is not approved, additional costly and time-consuming litigation would ensue. Several complex, disputed issues would need to be addressed in this matter if the parties were to continue to litigate, including, but not limited to, ruling on the various pre-trial motions filed by the parties. The Plaintiff and the Class also bore the risk of not prevailing during the pending trial in this matter or losing on appeal to the United States Court of Appeals for the Sixth Circuit. Thus, trial on the merits would likely be protracted and expensive, would involve highly complex legal and factual issues related to liability and damages or other relief, and would involve substantial uncertainties, delays, and other risks inherent in litigation, with the possibility of limited to no recovery for Plaintiff and Class Members in the end.

There is also a strong possibility that some class members may only receive nominal damages at trial because the Defendant sought to provide evidence of the security risk posed by gang-affiliated inmates being housed together in the jail's general population. Settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner and provides for essentially the same type of relief that Plaintiff and the Class would obtain if they succeeded after lengthy and costly litigation. Further, any such decision reached on these issues would probably lead to an appeal. The continuation of the litigation in this matter would not likely result in an increased benefit to the Class Members. More litigation instead would lead

to a substantial expenditure in costs by both Parties. In contrast, the Settlement here represents the culmination of eight years of litigation and provides immediate, significant, and certain recovery of $2,500,000.00 for the Class. Accordingly, this factor supports approval of the Settlement. See *N.Y. State Teachers' Ret. Sys. GM Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016)

### c) Amount of Discovery Conducted

The parties have engaged in meaningful discovery. The parties have taken fifteen depositions and exchanged thousands of pages of written discovery, including damages information, so that Plaintiff could properly evaluate the value of her and the class's claims. Both parties retained expert witnesses. Counsel conducted a thorough examination regarding the impact of Defendant's alleged conduct on Settlement Class Members and the alleged damages and were able to act intelligently in negotiating the proposed Settlement. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *4 (S.D. Ohio Aug. 17, 2018) ("In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced. . . . In this consideration, the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties.") (citations omitted). Here, more than ample discovery has taken place.

### d) Likelihood of Success on the Merits

Plaintiff and Defendant both faced significant risks on the merits and the potential class and collective scope of this matter. This is evident from the many complex issues the parties would need to address going forward, as set forth in evaluating factor two, *supra*.

### e) Opinions of Class Counsel and Representatives

Class counsel, who have resolved many civil rights cases on both a class-wide and individual basis, as well as many other class action cases, are convinced that this Settlement is fair and reasonable both standing on its own and when viewed against similar overtime settlements. Here, "the Court should defer to the judgment of experienced counsel who has competently evaluated the strength of [their] proofs." *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (citation omitted); see also *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *12 (E.D. Mich. Dec. 13, 2011) ("Class counsel's judgment that settlement is in the best interest of the class is entitled to significant weight, and supports the fairness of the class settlement.").

Similarly, Plaintiff actively oversaw the litigation of this case since its inception and determined to accept the settlement on behalf of the Class with a full understanding of the Action's merits, risks, and her duties to absent Class Members. The Settlement is structured to provide relief to individual Class Members on a *pro rata* basis, akin to what they would receive in individual damages hearings, without the costly formalities and potential delays inherent in federal court proceedings. The actual, likely amount to be received by each Class Member exceeds $2,200 and is fair and reasonable. While recovery could be greater if Plaintiff and the Class succeeded on all claims at trial and survived an appeal, there is no guarantee of that. This valuation and allocation method is a reasonable and fair settlement for these claims and is particularly fair and reasonable given the inherent risks of continued litigation on the merits of plaintiffs' claims.

### f) Reaction of Absent Class Members

There have been no objections filed by any members of the Settlement Class. See *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2020 WL 354307, at *1 (E.D. Ky. Jan. 21, 2020) (finding class reaction weighed in favor of settlement where, in class of 428 members, one

individual opted out and five disputed payment); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("A certain number of optouts and objections are to be expected in a class action. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). Class counsel have received many calls and emails regarding the Settlement after class members received the notices, and the reaction to the Settlement has been overwhelmingly positive.

### g) Public Interest

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F.3d at 632 ("we must consider—the federal policy favoring settlement of class actions."); *Vassalle* at *16; *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."). Accordingly, the Settlement should be approved where it "provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio Jan. 17, 2019) (Dlott, J.).

Resolution of disputed claims in a complex putative class and collective action of this kind serves the public interest. The substantial judicial resources that would need to be used to resolve this dispute can now be redirected toward other public needs. Moreover, it is in the public interest that hundreds of individuals who were subjected to Defendant's policies and procedures are eligible for a meaningful monetary award and that the parties, including the Defendant Franklin County, will not face the risks and expense inherent in continued litigation. Additionally, it is in the public interest that Defendant ceases its practice of photographing the tattoos of misdemeanor detainees as asserted in this lawsuit and will train its employees about the new policy in due course.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the proposed Settlement as final and certify the Settlement Class for settlement purposes.

\#

Respectfully Submitted:

Dated April 28, 2022

| | |
|---|---|
| Andrew Baker, Esquire<br>THE BAKER LAW GROUP<br>50 W. Broad Street, Suite 1814<br>Columbus, OH 43215<br>Telephone: 614.228.1882<br>Telecopier: 614.228.1862<br>andrew.baker@bakerlawgroup.net<br><br>/s Nicholas Migliaccio<br><br>Nicholas A. Migliaccio, Esquire<br>Jason S. Rathod, Esquire<br>MIGLIACCIO & RATHOD LLP<br>412 H St., NE<br>Suite 302<br>Washington, DC 20002<br>Telephone: 202.470.3520<br>Telecopier: 202.800.2730<br>nmigliaccio@classlawdc.com | /s Elmer Robert Keach, III<br><br>Elmer Robert Keach, III, Esquire<br>LAW OFFICES OF ELMER<br>ROBERT KEACH, III, PC<br>One Pine West Plaza, Suite 109<br>Albany, NY 12205<br>Telephone: 518.434.1718<br>Telecopier: 518.770.1558<br>bobkeach@keachlawfirm.com<br><br>D. Aaron Rihn, Esquire<br>Sara Watkins, Esquire<br>ROBERT PEIRCE & ASSOCIATES, P.C.<br>Gulf Tower, Suite 125<br>707 Grant Street<br>Pittsburgh, PA 15219-1918<br>Telephone: 412.281.7229<br>Telecopier: 412.281.4229<br>arihn@peircelaw.com |

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I certify that on April 28, 2022, I filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS CERTIFICATION with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

    Amy L. Hiers, Esquire
    Ahiers@franklincountyohio.Gov

    Jesse William Armstrong
    Jarmstrong@franklincountyohio.Gov

    ***Attorneys for Defendant***

    */s Elmer Robert Keach, III*
    Elmer Robert Keach, III